UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jaime Santiago,<br><br>    Plaintiff,<br><br>        v.<br><br>Raytheon Corporation,<br><br>    Defendant. | Civil Action No. 09-12217-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                          July 22, 2011

## I. Introduction

Plaintiff Jaime Santiago, proceeding *pro se*, has brought a claim for employment discrimination against his former employer, Raytheon Corporation ("Raytheon"). Raytheon has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, Raytheon's motion is GRANTED.

## II. Burden of Proof and Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "An issue is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex. rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). "A fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5. The moving party bears the burden of showing the district court the basis for its motion and identifying where there

1

exists a lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"To successfully oppose a properly supported motion for summary judgment, the non-moving party must demonstrate specific facts which establish a genuine issue for trial." Posadas de P.R., Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988). The Court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995). Disputes over facts that are not material to the issues raised will not defeat a motion for summary judgment. Anderson, 477 U.S. at 248.

Courts "hold [parties proceeding *pro se*] to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), but even under a relaxed standard for formal pleadings, "a *pro se* litigant must meet the specificity requirement of Federal Rule 56." Posadas de P.R., 856 F.2d at 401.

### III. Factual Background

The following facts are undisputed by the parties.

On February 21, 2005, Raytheon hired Santiago as a systems engineer. His job classification and pay grade did not change at any point during the tenure of his employment at Raytheon.

In February 2006, Santiago attended a meeting with his supervisors at which he received a copy of his performance review summary for 2005. Although the summary stated that Santiago's "Overall Performance Rating" was "Meets Requirements," Green Aff. Ex. A (Performance and Development Summary), #34-2 at 4, it also noted that his communication skills, his judgment as to technical efforts and task planning, and his comprehension of his assignments and general system

2

needs all needed improvement. Id. The summary expressly noted that Santiago did not complete or define a "Six Sigma Specialist project" within six months of joining Raytheon, a failure the summary characterized as "a significant shortfall against his 2005 goals / expectations," and stated that "[i]t is critical that Jaime define and complete a Six Sigma Specialist project as soon as possible and no later than April 2006." Id. By April 2006, Santiago still had not completed a Six Sigma Specialist project.

In mid-July 2006, Santiago was placed on medical leave from work at Raytheon. On October 2, 2006, Santiago signed a "Return to Work Agreement," Conant Aff. Ex. A (Return to Work Agreement), #34-3 at 3, and Raytheon cleared him to return to work. The Return to Work Agreement stated that upon his return, Santiago was expected to meet certain conditions, including conducting himself in a professional manner, performing tasks consistent with his position as a systems engineer, responding to communications from his supervisor in a timely manner, and attending counseling with Raytheon's Employee Assistance Program.

On December 14, 2006, Raytheon found it necessary to give Santiago a "Performance Improvement Plan"("PIP") in a meeting with supervisors. PIP is a management tool designed to help underperforming employees improve their job performance. The PIP documented Santiago's failure to complete work tasks assigned to him, his failure to communicate his schedule and work status to his supervisors and his failure to demonstrate initiative in expanding his knowledge of a subset of engineering skills known as "UEWR." The PIP also notified Santiago that unless he completed certain tasks on both his Six Sigma project and on a separate UEWR project by January 25, 2007, "further disciplinary action may occur, up to and including termination." Mahoney Aff. Ex. A (Original PIP), #34-4 at 5. Santiago thought that his supervisor, Melissa Mahoney, was unfair

3

to him in conjunction with his PIP, but he later conceded in his deposition that he did not know why she was unfair to him.

On January 8, 2007, Santiago's supervisor removed him from the UEWR project due to his inadequate performance. Raytheon then revised Santiago's PIP, removing the requirement that Santiago complete the UEWR task, but reiterating that he had to finish a Raytheon Six Sigma project, and giving him more time, until February 12, 2007, to complete the PIP work plan. Mahoney Aff. Ex. B (Revised PIP), #34-4 at 9.

On February 12, 2007, Santiago met with his supervisors and a Raytheon human resources representative. At the meeting, the supervisors informed Santiago that he had not completed the items in the revised PIP.

Shortly thereafter, a series of Santiago's supervisors and Raytheon officials collectively decided to terminate Santiago's employment because of his consistently unsatisfactory job performance, including but not limited to his failure to complete the required tasks set forth in his PIP, even as revised. Between March 8, 2007 and March 21, 2007 a "Termination for Performance" form, which set forth a detailed history of the inadequacy of Santiago's performance at Raytheon and concluded that "[i]t is evident that since [Santiago] began working at Raytheon, he has yet to produce any work that is of the quality o[f] an Engineer, even at an [entry] level," and "recommend[ed] the termination of . . . Santiago's employment," was circulated among and signed by Santiago's supervisor, two Raytheon human resources representatives, an Raytheon's Engineering Director, Vice President of Engineering, and Vice President of Human Resources and each acknowledged their agreement with this decision. Quinn Aff. Ex. A (Termination for Performance), #34-5 at 5.

4

On March 22, 2007, Santiago was called into a meeting and informed that Raytheon was terminating his employment. Santiago conceded that after reviewing his Termination for Performance form, he realized that the he was terminated because his supervisors "felt [his] performance was inadequate." Stewart Aff. Ex. A (Santiago Deposition), #34-1 at 22.

## IV. Procedural History

Santiago filed his *pro se* complaint in this case on December 30, 2009. Raytheon moved to dismiss the complaint on February 22, 2010, relying in part on the ground that Santiago had failed to articulate a protected classification underlying his discrimination claim. In his response, Santiago identified his race as Hispanic, which Raytheon does not dispute. On April 8, 2010, Judge Gertner granted in part and denied in part Raytheon's motion, construing Santiago's complaint in part as "a Title VII wrongful termination claim" sufficiently plausible to survive dismissal and dismissing the remainder of the complaint.

After the April 8, 2010 Order was issued, Santiago moved to amend his complaint to add a defamation claim and to add factual allegations not included in his original complaint and Raytheon moved for summary judgment. After reassignment of the case to this session, the Court denied Santiago's motion to amend and held a hearing on Raytheon's motion for summary judgment on July 13, 2011.

## V. Discussion

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In the First Circuit, a plaintiff must show the following to

allege a Title VII action: (1) membership in a protected class; (2) qualification for employment; (3) an adverse employment action; and (4) a continuing need for the work the plaintiff was performing prior to termination. Douglas v. J.C. Penney Co., 474 F.3d 10, 13-14 (1st Cir. 2007); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 59 (1st Cir. 2005). "The ultimate question is whether the employee has been treated disparately 'because of race.'" Thomas v. Eastman Kodak Co., 183 F.3d 38, 58 (1st Cir. 1999).

Title VII wrongful termination claims are governed by the three-step burden-shifting regime set forth by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). At the first step, the plaintiff has the burden of showing a *prima facie* case of discrimination. Id. at 802. If the plaintiff carries his burden at step one, the court moves to step two, where the burden shifts to the employer to provide evidence of a legitimate, non-discriminatory reason for terminating the plaintiff's job. Id. at 802-03. If the employer carries its burden at step two, the court moves to step three, where the burden shifts back to the plaintiff to show that the reason the employer calls legitimate and non-discriminatory is merely a pretext for the employer's real, discriminatory motive. Id. at 803.

Here, at step one, the Court ruled, in the April 8, 2010 order, that Santiago carried his burden of showing a *prima facie* case that his employment was terminated because he is Hispanic.

At step two, Raytheon has more than carried its burden of providing evidence of a non-discriminatory motive. As a matter of law, deficient performance is a legitimate, non-discriminatory reason for firing an employee. García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008). Raytheon has presented ample evidence that it terminated Santiago's employment not because he is Hispanic but because of his deficient performance. The documentation of Santiago's inadequate performance began with his first evaluation in February 2006, continued through his failure to

6

complete the PIP - even when the number of projects that the PIP required him to complete was reduced and the time frame in which he needed to complete them was extended - and concluded with the March 2007 Termination for Performance form with a detailed recital of Santiago's performance over the entire course of his employment. Moreover, the conversations and meetings between Santiago, his supervisors, and various Raytheon human resources officials recounted in affidavits submitted to the Court by Raytheon and in Santiago's deposition testimony, Stewart Aff. Ex. A (Santiago Deposition), #34-1 at 22, confirm that Raytheon's concern with Santiago when it terminated his employment was his work performance. This evidence, taken together, is more than sufficient to conclude the step two analysis in Raytheon's favor.

At step three, Santiago has failed to provide any evidence showing that Raytheon relied on Santiago's alleged poor performance as a mere pretext for discriminatory intent or any evidence that contradicts any of the documents proffered by Raytheon. It appears from Santiago's filings before this Court and his oral argument at the motion hearing that he believes his performance was adequate, but a plaintiff's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext," Shorette v. Rite Aid of Me., Inc., 155 F.3d 8, 15 (1st Cir. 1998), as "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (citation and quotation marks omitted). Similarly, although Santiago clearly believes that he was mistreated on account of his race and ethnicity during the course of his employment with Raytheon, in his filings and his oral argument he could not and did not point to any specific evidence in the record showing that his race or ethnicity played any role in the Raytheon's decision to terminate his employment, and "'[i]t is . . . well settled that an employee's subjective belief that he

7

suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.'" Santiago v. Canon USA, Inc., 138 F.3d 1, 6 (1st Cir. 1998) (quoting Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)). Because Santiago cannot point to any "specific facts" either contradicting Raytheon's assertion that it fired Santiago because of his performance or showing that Raytheon's termination decision was motivated by underlying discriminatory animus, there is no "genuine issue for trial" and summary judgment is appropriate. Posadas de P.R., 856 F.2d at 401.

## VI. Conclusion

For the reasons discussed above, Defendant Raytheon's Motion for Summary Judgment is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge